**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

---

FLOSPORTS, INC.,

Plaintiff, Case No. 3:26-cv-00108

v.

JUSTIN TRITZ and TW CLOCKS LLC,

Defendants.

---

# PLAINTIFF FLOSPORTS, INC.'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

Plaintiff FloSports, Inc.. ("FloSports") respectfully submits this response to Defendants' Motion to Dismiss ("Motion"). (Dkt. 4.)

## INTRODUCTION

Defendants' Motion improperly asks this Court to treat a Rule 12(b)(6) proceeding like summary judgment. It urges the Court to reject detailed factual allegations, resolve disputed inferences, and accept Defendants' preferred narrative that all similarities between the products are benign, generic, or independently developed. That is not how federal pleading works. FloSports has alleged a coherent, fact-specific story of misuse, acceleration, and contractual breach—and that is more than enough to proceed.

The Complaint alleges that after leaving SportsEngine, Justin Tritz retained Trackwrestling source code and proprietary materials; that after FloSports acquired

exclusive ownership of that software and information, Tritz later used those confidential materials to dramatically accelerate the development and launch of a competing platform; and that TW Clocks breached surviving contractual obligations by failing to return or destroy FloSports' Confidential Information and by disclosing and misusing it. Critically, the Complaint alleges that once FloSports acquired exclusive ownership of the Trackwrestling software and related confidential and proprietary materials in 2021, Tritz had no authorization to retain, access, or use them—yet he later used those materials to build and launch a competing platform. Those allegations are not conclusory. They are supported by extensive factual detail, including specific similarities that go far beyond surface-level design and plausibly reflect access to proprietary code, architecture, and bracket logic.

Unable to confront those allegations on their terms, Defendants instead demand proof—proof of actual use, proof that the information was not public, proof negating every alternative explanation they can imagine. The Federal Rules require none of that at the pleading stage. FloSports need only plausibly allege that Tritz obtained and retained a benefit—here, substantial time, cost, and market-entry advantages—under circumstances that make it inequitable for him to keep it without compensation. The Complaint easily clears that bar.

Defendants' breach of contract arguments fare no better. They do not dispute that the Co-Promotion Agreement existed, that its confidentiality obligations survived termination, or that TW Clocks was required to return or destroy FloSports' Confidential Information. Instead, they ask the Court to decide factual questions about

timing, attribution, and use—questions that cannot be resolved on a motion to dismiss. The Complaint plausibly alleges multiple, independent breaches of those surviving obligations.

Defendants' alternative explanations may be arguments for another day. At this stage, they are legally irrelevant. Because the Complaint plausibly alleges unjust enrichment and breach of contract, Defendants' motion should be denied in its entirety.

## RELEVANT FACTUAL BACKGROUND

### A. Trackwrestling and FloSports' Acquisition of Trackwrestling

FloSports is a sports media and technology company that provides live event coverage and sports management software across multiple sports, including wrestling. (Dkt. 1-1 "Compl." ¶¶ 7-10.) In 2003, Defendant Justin Tritz ("Tritz") founded Trackwrestling, a digital platform designed to manage wrestling tournaments through bracket seeding, bout management, scoring, and results. (Compl. ¶¶ 11-12[1].) Over time, Trackwrestling expanded its functionality to include bracket generation, bout sheets, online registration, real-time scoring, and live results, and became a dominant platform within the wrestling community, even adopted by major organizations, including USA Wrestling and state high school athletic associations. (Compl. ¶¶ 12[2]-13[3].)

In 2016, NBC Sports Group's Sport Ngin, Inc., formerly known as SportsEngine, Inc. ("SportsEngine") acquired Trackwrestling. (Compl. ¶ 13[4].) Through that

[1] The Complaint inadvertently contains two paragraphs numbered "12" and two paragraphs numbered "13." The citation here refers to the first paragraph 12.
[2] The citation here refers to the second paragraph 12.
[3] The citation here refers to the first paragraph 13.
[4] The citation here refers to the second paragraph 13.

transaction, SportsEngine acquired all ownership and exclusive intellectual-property rights to the Trackwrestling platform. (Compl. ¶ 14.)

In 2021, FloSports acquired all Trackwrestling assets from SportsEngine, including the Trackwrestling software, source code, databases, proprietary logic, and related confidential and proprietary information (the "TW Software"). (Compl. ¶ 22.) Following the acquisition, FloSports integrated Trackwrestling's infrastructure and event-management tools into its FloWrestling product, strengthening its position as a leading wrestling platform. (Compl. ¶¶ 23-25.)

**B. The Co-Promotion Agreement and Surviving Confidentiality Obligations**

In May 2016, while SportsEngine owned Trackwrestling, Defendant TW Clocks LLC ("TW Clocks") entered into an Amended and Restated Co-Promotion Agreement ("Co-Promotion Agreement") with SportsEngine. (Compl. ¶ 15.) The Co-Promotion Agreement created exclusive marketing and technical integration commitments and granted TW Clocks limited access to Trackwrestling-related software and information. (Compl. ¶ 16.)

As part of the 2021 Trackwrestling acquisition, FloSports acquired all rights under the Co-Promotion Agreement. (Compl. ¶ 26.) FloSports subsequently entered into a Memorandum of Understanding with TW Clocks that terminated the Co-Promotion Agreement, but expressly provided that Section 6 (Intellectual Property

and Confidential Information[5]), survived termination. (Compl. ¶¶ 27-28.)

Section 6.1 of the Co-Promotion Agreement contains broad confidentiality obligations. (Compl. ¶ 29.) TW Clocks expressly acknowledged FloSports owned the TW Software, that TW Clocks would only use the FloSports software in compliance with the terms of the Co-Promotion Agreement, and that TW Clocks would not contest or assist another to contest the validity or ownership of the TW Software. *Id.* TW Clocks further agreed not to disclose or use FloSports' Confidential Information except as necessary to perform its contractual obligations. (Compl. ¶ 31.) TW Clocks further agreed that upon termination it would destroy or return all Confidential Information in its possession or control. (Compl. ¶ 32.)

**C. Tritz's Retention of Trackwrestling Materials After Leaving SportsEngine**

In or around late 2019 and early 2020, Tritz notified Trackwrestling staff and users that he was leaving Trackwrestling and SportsEngine. (Compl. ¶¶ 19-20.) Upon information and belief, when he departed, Tritz retained the personal computer he had used to develop and manage Trackwrestling, including code, database structures, and internal communications relating to the platform. (Compl. ¶ 21.)

[5] Under Section 6.3(a), Confidential Information is defined broadly to include "information concerning the party's designs, methodologies, policies, procedures, techniques, processes, information and technology systems, global network infrastructure and related capabilities, intellectual property, financial and accounting data, reports, cost and pricing information, market projections and analyses, strategies, business plans, business activities, research and development, product design, performance specifications, schematics, contract terms, customer lists, and identity of and information relating to prospective or existing customers, suppliers and vendors, or any other similar types of information, whether or not such information is marked as confidential or proprietary." (Compl. ¶ 33.)

After FloSports' 2021 acquisition, Tritz no longer had any authorization to retain or use Trackwrestling's software or Confidential Information. Nevertheless, he retained access to those materials. (*Id.*)

**D. Tritz's Development and Launch of USA Bracketing Using FloSports' Confidential Information**

Beginning in or around the summer of 2023, Tritz began developing a new wrestling tournament-management platform. (Compl. ¶ 34.) In August 2024, Tritz informed a FloSports employee, formerly part of the Trackwrestling technical team, that he was working on a new wrestling-related project and attempted to recruit that employee. (Compl. ¶ 35.)

On January 1, 2025, USA Bracketing launched as a competing event-management platform. (Compl. ¶ 36.) Upon information and belief, Tritz is the primary developer of USA Bracketing and has been publicly described as the "principal architect" of both Trackwrestling and USA Bracketing, including on a wrestling-industry podcast in which he discussed USA Bracketing's development. (Compl. ¶¶ 37-38.) During that podcast, Tritz publicly disclosed FloSports' Confidential Information concerning Trackwrestling database structures. (Compl. ¶ 39.)

The Complaint alleges extensive and unusual similarities between USA Bracketing and Trackwrestling that go far beyond public-facing features. Much of USA Bracketing's publicly visible code is identical or nearly identical to Trackwrestling's code, including programming comments. (Compl. ¶ 40.) The platforms share nearly identical interfaces, bracket templates, and event-management features. (Compl. ¶¶ 41-

68.) USA Bracketing replicates advanced, bespoke Trackwrestling features, including identical bout-board architecture, deep template-level customization, advanced search functionality, and proprietary bracket-assignment logic. (*Id.*) Notably, USA Bracketing duplicated Trackwrestling's unique and proprietary bracket naming conventions and rigid bracket libraries, features that are time-intensive and costly to develop independently. (Compl. ¶¶ 64-68.)

Upon information and belief, Tritz retained access to Trackwrestling source code and Confidential Information and used that information to substantially accelerate the development and launch of USA Bracketing, conferring significant time, cost, and competitive advantages. (Compl. ¶¶ 69-74.)

Since its launch, USA Bracketing has been adopted by major wrestling organizations, including USA Wrestling and multiple state-level associations, directly competing with FloSports' Trackwrestling platform. (Compl. ¶¶ 75-76.)

**E. TW Clocks' Failure to Return or Destroy Confidential Information**

Despite the termination of the Co-Promotion Agreement and the survival of Section 6, TW Clocks never returned or destroyed FloSports' Confidential Information as required. (Compl. ¶¶ 71-72.) TW Clocks also disclosed Confidential Information publicly and used it for purposes unrelated to any contractual obligation, including to support the development of a competing platform. (Compl. ¶¶ 88-89.)

## LEGAL STANDARD

On a motion to dismiss, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009). The complaint states a plausible claim for relief "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Plausibility in this context does not imply that a court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010). Rather, the plaintiff simply "must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Id.* (emphasis added). The "notice-pleading standard is deliberately 'undemanding.'" *Orr v. Shicker*, 147 F.4th 734, 740 (7th Cir. 2025) (cleaned up). To this point, the Federal Rules require "no more than a statement of the claim" without the pleading of evidence to support it. *Berk v. Choy*, 223 L. Ed. 2d 463, 607 U.S. ___, 2026 U.S. LEXIS 497, *471 (2026).

## ARGUMENT

### I. FloSports Sufficiently Alleges a Claim For Unjust Enrichment Against Tritz.

To state a claim for unjust enrichment, a plaintiff must allege: (1) benefit conferred on defendant; (2) appreciation of benefit by defendant; and (3) circumstances making acceptance or retention of benefit inequitable. *See Sands v. Menard,* 2017 WI 110, ¶ 30, 379 Wis. 2d 1, 904 N.W.2d 789.

FloSports has adequately pled all three elements. The Complaint alleges that FloSports acquired exclusive ownership of Trackwrestling's software, source code,

databases, and related confidential and proprietary materials in 2021. (Compl. ¶ 22.) It further alleges that Tritz retained Trackwrestling code and database structures when he departed NBC/SportsEngine, and later developed and launched a competing tournament-management platform, USA Bracketing. (Compl. ¶¶ 21, 34–37.) The pleaded "benefit" is concrete: Tritz's use of FloSports' materials enabled substantial time and cost savings, accelerated market entry, and competitive positioning. (Compl. ¶¶ 73, 79.) And the Complaint alleges that USA Bracketing has been adopted by major wrestling organizations, directly competing with FloSports' platform. (Compl. ¶¶ 75–76.)

### A. Defendants' timing and "no benefit conferred" argument fails because FloSports alleges inequitable retention of a benefit after it acquired exclusive ownership.

Defendants argue FloSports did not confer a "benefit" on Tritz because he retained Trackwrestling materials when he left NBC/Trackwrestling in April 2020—about a year before FloSports acquired Trackwrestling—so the unjust-enrichment elements cannot be satisfied. (Dkt. 5 at 6–7.) That argument is contrary to equitable principles and, in this context, the law.

Wisconsin law recognizes that unjust enrichment may exist even where a benefit was provided through intermediaries or non-plaintiffs; the relevant question is whether the defendant retained a benefit under circumstances making retention inequitable. *See Columbia River Techs. 1, LLC v. Blackhawk Grp. LLC*, 19-cv-385-jdp, 2019 U.S. Dist. LEXIS 169939, *7 (W.D. Wis. Oct. 1, 2019) (citing *Crumble v. Johnson*, 2019 WI App 39, ¶ 17, 388 Wis. 2d 258, 932 N.W.2d 193). Here, FloSports is not a stranger to the alleged benefit.

FloSports is the successor-in-interest that acquired exclusive ownership of the Trackwrestling software and related confidential and proprietary information in 2021. (Compl. ¶ 22.)

The Complaint alleges that after FloSports acquired that exclusive ownership, Tritz later used those materials—without authorization—to develop and commercialize USA Bracketing, thereby obtaining time, cost, and market-entry advantages at FloSports' expense. (Compl. ¶¶ 22, 34–37, 73, 79.) Put differently, Defendants' timing argument misses the point: the benefit arose when Tritz used Trackwrestling source code and Confidential Information to accelerate development of a competing software platform between 2023 and 2025, after FloSports acquired exclusive ownership of those materials. From that point, any continued retention or exploitation of benefits traceable to those materials plausibly conferred an inequitable advantage on Tritz, regardless of when development activities may have begun (or even whether aspects were completed).

Having established that Defendants' "pre-acquisition retention" narrative does not defeat the benefit element, Defendants' remaining arguments collapse into an attempt to reframe FloSports' allegations as nothing more than similarity in public, generic features—and to demand proof rather than plausibility.

### B. Defendants improperly collapse Rule 12 into a merits inquiry, which does not defeat plausibility.

Defendants also argue that FloSports has not plausibly alleged unjust enrichment because the similarities it identifies are purportedly generic or publicly visible. (Dkt. 5

at 7–9.) FloSports does not dispute the general proposition that claims cannot proceed based solely on descriptions of what software does "in generic terms that any user can discern," *NEXT Payment Solutions, Inc. v. CLEAResult Consulting, Inc.*, 163 F.4th 1091, 1097 (7th Cir. 2026), or on publicly visible interface features, *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583–84 (7th Cir. 2002). But those cases underscore why dismissal is unwarranted here: the Complaint does **not** rely on generic functionality or surface-level similarity alone.

Instead, the Complaint alleges that "much of the publicly visible programming code" on USA Bracketing "is identical or nearly identical to Trackwrestling code," including programming comments. (Compl. ¶ 40.) It further alleges that USA Bracketing duplicated Trackwrestling's highly specific and distinctive bracket libraries and naming conventions. (Compl. ¶¶ 64–68.) Taken as true, these allegations—including Tritz's retention of Trackwrestling source materials (Compl. ¶ 21), the presence of code that is 'identical or nearly identical' to Trackwrestling code (including comments) (Compl. ¶ 40), and the duplication of Trackwrestling's distinctive bracket libraries and naming conventions (Compl. ¶¶ 64–68)—support a reasonable inference of access and use beyond what any user could discern from generic public features. Those same allegations plausibly support the conferral and retention of a benefit.

Defendants' framing also effectively seeks a heightened pleading burden—demanding proof of actual use, proof the information was not public, and proof negating alternative explanations. Rule 12 requires none of that. At this stage, FloSports need only allege a plausible story that "holds together." *Swanson,* 614 F.3d at 404. Only

"obvious" alternative explanations must be addressed, and where competing inferences are reasonable, the plaintiff prevails at the pleading stage. *Hughes v. Northwestern Univ.*, 63 F.4th 615, 629–30 (7th Cir. 2023).

Moreover, although this is not currently a trade secret case, courts in software cases have recognized that at the pleading stage a plaintiff need not itemize source code or technical components to provide fair notice; identifying the software at issue and the nature of the alleged misuse is sufficient. *See, e.g.*, *Eternix Ltd. v. CivilGEO, Inc.*, 23-cv-633-jdp, 2024 U.S. Dist. LEXIS 101109, *10 (W.D. Wis. June 5, 2024) (citing *Servicios Technologicos de Guatemala, S.A. v. WOCCU Servs. Grp., Inc.*, No. 13-cv-601-wmc, 2014 U.S. Dist. LEXIS 107092 (W.D. Wis. Aug. 5, 2014)). It would be incongruous to require greater factual specificity to plead unjust enrichment—an equitable claim focused on retention of a benefit—than is required to plead misappropriation of software at the Rule 12 stage.

Discovery will test the extent of Defendants' access to and use of FloSports' confidential materials, but Rule 12 does not require FloSports to plead all of its evidence or prove misuse at the outset.

### C. Defendants' "alternative explanations", "general knowledge", and "not expedited" points raise factual disputes that cannot be resolved on a motion to dismiss.

Defendants repeatedly invoke "alternative explanations" to argue that Tritz may have lawfully developed USA Bracketing without relying on FloSports' confidential information—for example, that similarities stem from publicly available features, that Tritz relied on decades of experience and general knowledge, and that the development

timeline was not unusually expedited. (Dkt. 5 at 8–9.) But an explanation that renders Defendants' conduct only *possibly* lawful does not defeat plausibility at the pleading stage. *See Hughes*, 63 F.4th at 629–30.

Here, the Complaint pleads facts supporting the inference of access and use that go beyond generic, public similarities: code that is "identical or nearly identical" (including comments) and duplication of distinctive bracket libraries and naming conventions that are time-intensive to develop. (Compl. ¶¶ 40–41, 64–68.) Those allegations, taken as true, plausibly support FloSports' contention that Tritz retained a benefit in the form of time, cost, and market-entry advantages. (Compl. ¶¶ 73, 79.) Whether Defendants can ultimately prove a benign explanation for these allegations is a merits question for discovery and summary judgment—not Rule 12 dismissal.

## II. FloSports Sufficiently Alleges a Claim For Breach of Contract Against TW Clocks.

FloSports plausibly alleges each element of a breach of contract claim. The elements are well established: a party claiming a breach of contract must establish three basic elements: "[1] whether a valid contract exists, [2] whether a party has violated its terms, and [3] whether any such violation is material such that it has resulted in damages." *Steele v. Pacesetter Motor Cars, Inc.*, 2003 WI App 242, ¶ 10, 267 Wis. 2d 873, 880, 672 N.W.2d 141 (2003) (citation omitted). FloSports plausibly alleges each element.

The first element is not in dispute. TW Clocks entered into the Co-Promotion Agreement with SportsEngine in May 2016. (Compl. ¶ 15.) FloSports acquired all rights under the Co-Promotion Agreement from SportsEngine in 2021. (Compl. ¶ 22.) The Co-

Promotion Agreement contained confidentiality obligations in Section 6.3 (Nondisclosure of Confidential Information) that expressly survived termination of the agreement pursuant to the Memorandum of Understanding dated February 2, 2021. (Compl. ¶¶ 28–33.) Defendants focus exclusively on the second element, arguing that Plaintiff has not plausibly alleged a breach of those surviving obligations.

That argument confirms, rather than defeats, the plausibility of FloSports' claim. The Complaint alleges that TW Clocks disclosed FloSports' confidential information, including through statements made on *The Wisconsin Wrestler* podcast. (Compl. ¶¶ 38-39.) Defendant responds by pointing to that same podcast and offering its own characterization of what was said and when. (Dkt. 5 at 10-11.) But that argument merely raises a factual dispute. At the pleading stage, the Court must accept plaintiff's allegations as true and draw all reasonable inferences in plaintiff's favor, not Defendant's competing interpretation of the podcast or the surrounding events. *Iqbal*, 556 U.S. at 678. Whether the statements disclosed confidential information and whether those disclosures are attributable to TW Clocks are factual questions that cannot be resolved on a motion to dismiss.

Nor does TW Clocks' dissolution defeat the claim. The fact that USA Bracketing development may have begun after TW Clocks dissolved does not mean that the

disclosure occurred after dissolution[6]. The Complaint alleges that Tritz began developing USA Bracketing around the summer of 2023, but planning and preparation for such a project would necessarily have begun earlier, and TW Clocks, through Tritz, could have disclosed confidential information before its dissolution in February 2023. In any event, the Complaint alleges independent breaches wholly untethered to USA Bracketing's development timeline. For example, the Complaint alleges that TW Clocks failed to destroy or return FloSports' Confidential Information in its possession or control as required by Section 6.3(a) of the Co-Promotion Agreement. (Compl. ¶¶ 71-72.) The obligation to return or destroy Confidential Information arose immediately upon termination of the Co-Promotion Agreement in February 2021, well before TW Clocks dissolved in February 2023, and TW Clocks' alleged failure to do so constitutes an independent breach regardless of later events.

The Complaint also alleges that TW Clocks disclosed FloSports' Confidential Information to a third party. Specifically, it alleges that TW Clocks, through its member Tritz, disclosed confidential information to those involved in developing USA Bracketing. At the pleading stage, that allegation must be accepted as true.

Similarly, the Complaint alleges that TW Clocks used FloSports' Confidential Information for purposes other than those permitted under the Co-Promotion

---

[6] Defendants' dissolution argument is a red herring. Under Wisconsin law, a dissolved limited liability company continues to exist for purposes of winding up its affairs and prosecuting and defending actions. Dissolution does not extinguish contractual liabilities, particularly where, as here, TW Clocks failed to publish notice barring unknown claims under Wis. Stat. § 183.0705. (Compl. ¶ 90.)

Agreement. (Compl. ¶¶ 88-89.) The Agreement required TW Clocks to use FloSports' Confidential Information only as necessary to perform its contractual obligations. Any use beyond that scope—including retaining the information after termination or allowing it to be used to develop a competing product—constitutes a breach. The Complaint alleges that TW Clocks retained FloSports' Confidential Information and failed to destroy or return it, which plausibly supports the inference that TW Clocks used or permitted use of that information for unauthorized purposes.

At bottom, the Complaint plausibly alleges multiple, independent breaches of contractual obligations that survived termination of the Co-Promotion Agreement. Defendants' arguments do not undermine plausibility; they instead invite the Court to weigh evidence and draw inferences in Defendants' favor, which Rule 12(b)(6) does not permit. Defendants' motion to dismiss the breach of contract claim should be denied.

## CONCLUSION

For the foregoing reasons, FloSports respectfully requests that this Court deny Defendants' Motion to Dismiss in its entirety. In the alternative, should the Court determine that any aspect of the Complaint requires additional factual detail, FloSports respectfully requests leave to amend pursuant to Rule 15, which provides that leave should be freely given where, as here, amendment would not be futile or prejudicial.

Dated March 12, 2026.

Respectfully submitted,

**MICHAEL BEST & FRIEDRICH LLP**

By: */s/ John C. Scheller*____________________

John C. Scheller, #1031247
jcscheller@michaelbest.com
Tanya M. Salman, # 1089151
tmsalman@michaelbest.com
Julia A. Valgento, #1126712
julia.valgento@michaelbest.com
One South Pinckney Street, Suite 700
Madison, WI 53703
Telephone: 608.257.3501
Facsimile: 608.283.2275

Attorneys For Plaintiff